IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RHONDA WILLIAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil No. 3:23-CV-00850-K |
| | § | |
| GENERAL BINDING CORPORATION, | § | |
| GENERAL BINDING, LLC, ACCO | § | |
| BRANDS CORPORATION, and ACCO | § | |
| BRANDS USA, LLC, | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are Defendants General Binding LLC, ACCO Brands Corporation, and ACCO Brands USA LLC's ("Defendants") Motion to Dismiss Pursuant to Rule 12(b)(6) and Brief in Support Thereof (the "Motion to Dismiss"), Doc. No. 14, Plaintiff Rhonda Williams's Response to Defendants' 12(b)(6) Motion to Dismiss, Doc. No. 26, and Defendants' Reply Brief in Support of Their Motion to Dismiss Pursuant to Rule 12(b)(6).  Doc. No. 28.

Upon consideration of the parties' submissions, the Court **GRANTS** Defendants' Motion to Dismiss and **DISMISSES** all pending claims without prejudice. Rhonda Williams lost several fingers and suffered additional injuries when she used a laminating machine that misfed.  She sued four entities she says are responsible for negligently and defectively designing, manufacturing, and marketing the machine and subsequently dismissed her claims against three of the entities, leaving only General

Binding LLC ("General Binding") as a defendant.  In addition to compensatory damages, she seeks exemplary damages from General Binding because she believes it was grossly negligent.  General Binding moves to dismiss her claims, including her request for exemplary damages.  Because Ms. Williams has not alleged how the laminating machine that hurt her was defective or how General Binding's conduct demonstrated its gross negligence, dismissal is appropriate on her current pleading.  The Court will give Ms. Williams an opportunity to propose amendments to her pleading that clarify her claims.

## I.   BACKGROUND

According to Ms. Williams, in September 2020 she used a laminating machine that misfed and injured her arms, hands, neck, and back, among other body parts.  Doc. No. 1-1 ¶ 9–10.  Images submitted by Ms. Williams purportedly confirm that she lost her fingers as a result of the incident.  *Id.* ¶ 10.  Believing that General Binding and three other entities were responsible for her injuries, she filed a Petition for damages in state court.  Doc. Nos. 1; 1-1.

At the heart of Ms. Williams's Petition is the assertion that the laminating machine she used was unreasonably dangerous because it went into operation unexpectedly and could trap a user's hand and arm.  Doc. No. 1-1 ¶¶ 9, 10, 13, 19.  She says that the trapping action resulted from either a defect in the design of the machine or a defect in its manufacture.  *Id.* ¶¶ 13(a)–(b).  The former supports a "design defect" claim, and the latter supports a "manufacturing defect" claim.  *Id.*  Ms. Williams also

faults General Binding for failing to warn the machine's operators that the machine could activate unexpectedly and for failing to instruct the machine's owners to maintain the machine in a way that prevents unexpected activation. *Id.* ¶¶ 13(c)–(d). These are two different theories in support of a "marketing defect" claim. *Id.*

In her Petition, Ms. Williams attributes the allegedly defective design, manufacturing, and marketing of the laminating machine to General Binding's negligence, although she simultaneously seeks damages in strict liability, which does not require a showing of negligence. *Id.* ¶¶ 11–19; *Syrie v. Knoll Int'l*, 748 F.2d 304, 307 (5th Cir. 1984). She also contends that General Binding's negligence justifies an award of exemplary damages because it rose to the level of gross negligence. Doc. No. 1-1 ¶ 21. In her view, General Binding created an extreme risk of injury that it consciously disregarded. *Id.*

General Binding removed Ms. Williams's suit to this Court and moves to dismiss all of Ms. Williams's claims. Doc. No. 1; Doc. No. 14.

## II.   LEGAL STANDARD

The Court will dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) if Ms. Williams fails to plead facts sufficient to make the claim plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing the plausibility of a claim, the Court assumes that Ms. Williams's factual allegations are true but does not assume that her legal conclusions are true. *Id.* at 678–79.

The parties assume that the law of Texas applies to Ms. Williams's claims, Doc. Nos. 14, 26, 28, and the Court joins in their assumption. *Tifford v. Tandem Energy Corp.*, 562 F.3d 699, 705 n.2 (5th Cir. 2009); *see also Hil-Tech, LLC v. Shree Mahalaxmi Indus.*, 2023 WL 4602738, at *9 n.3 (S.D. Tex. July 3, 2023), *rep. & rec. adopted*, 2023 WL 4602691 (S.D. Tex. July 18, 2023).

## III.   DISCUSSION

Taken as true, Ms. Williams's allegations lack sufficient factual content to state plausible product liability claims.  The Court will discuss the limitations of the design defect, manufacturing defect, and marketing defect claims and then turn to the allegations of gross negligence.  For purposes of resolving General Binding's Motion to Dismiss, the Court does not distinguish between the versions of the defect claims based on negligence and the versions based on strict liability.  In relevant part, this mirrors Ms. Williams's own approach to the claims, which she adopts because she acknowledges that the versions based on negligence are "subsumed" in the versions based on strict liability.  Doc. No. 26 at 7.  In other words, both versions of each defect claim turn on proof of a defect in the laminating machine Ms. Williams used.  If she fails to sufficiently plead that the machine was defective for purposes of the strict liability version, then the negligence-based version fails, too.  *See Garrett v. Hamilton Standard Controls, Inc.*, 850 F.2d 253, 256 (5th Cir. 1988); *Shaun T. Mian Corp. v. Hewlett-Packard Co.*, 237 S.W.3d 851, 857 (Tex. App.—Dallas 2007, pet. denied).

4

## A. Design Defect

The Court dismisses Ms. Williams's design defect claims because she has not adequately pled that the laminating machine that injured her was defective. A design is generally defective only if it yields a product that is unreasonably dangerous because its utility to its user and the public is less than the risks created by its use, considering both the gravity and likelihood of the risks. *Emerson Elec. Co. v. Johnson*, 627 S.W.3d 197, 209–10 (Tex. 2021). Ms. Williams alleges that the design of the machine allowed it to activate unexpectedly and trap users' arms and hands, but neither the unexpected activation nor the trapping action are design defects. Doc. No. 1-1 ¶¶ 13(a), 19(a). They are undesirable features of the machine that may or may not be the product of a defect. Without knowing what design decisions caused the laminating machine to operate unsafely, the Court can only speculate about the relative utility and risks of the design and cannot plausibly infer that it is defective. *See Ardoin v. Stryker Corp.*, 2019 WL 4933600, at *3 (S.D. Tex. Oct. 7, 2019).

As General Binding points out, there is another flaw in Ms. Williams's pleading. Doc. No. 14 at 3–4. Nowhere in her Petition does Ms. Williams allege that there are alternatives to the design of the laminating machine or explain what they are. That is a critical omission because Ms. Williams cannot recover on her design defect claim unless she can show that a safer alternative design was feasible. Tex. Civ. Prac. & Rem. Code § 82.005(a). Translated to the early stage of the present proceedings, this means

5

that she must at least plead that the alternative design existed. *Coulter v. Deere & Co.*, 2022 WL 912778, at *5 (S.D. Tex. Mar. 29, 2022) (Rosenthal, C.J.).

Ms. Williams purports to find the requisite pleading in her Petition, but the allegations she cites are conclusory at best. She points to her allegations that the designer of the laminating machine designed it "[i]mproperly and defectively" in a manner that enabled it to "operate unexpectedly during its intended use." Doc. No. 26 at 3 (quoting Doc. No. 1-1 ¶¶ 13, 19). She then deduces that a proper design must exist if an improper one does. *Id.* Stretching further, she also deduces that a design that works as expected must exist if a design that produces unexpected results does. *Id.* The Court cannot accept the logic of the second deduction. The Court is willing to assume that the first deduction is correct and that Ms. Williams had a proper design in mind when she called General Binding's design improper, but that assumption is not enough to support her claim. She offers no factual basis for inferring that the design she imagined is a feasible and safer alternative to the machine's design. The Court cannot conclude that Ms. Williams's design defect claims are plausible on what amounts to the vague assertion that such an alternative exists. *See Coulter*, 2022 WL 912778, at *5; *Franklin v. Apple Inc.*, 569 F. Supp. 3d 465, 477–78 (E.D. Tex. 2021); *Villarreal v. Navistar, Inc.*, 2021 WL 1894700, at *2 (N.D. Tex. May 11, 2021) (Starr, J.).

## B. Manufacturing Defect

The Court dismisses Ms. Williams's manufacturing defect claims because she has not explained what error in the manufacturing of the laminating machine she used

made the machine defective.  Ms. Williams alleges only that some manufacturing defect caused the machine to activate unexpectedly and potentially trap users' arms and hands.  Doc. No. 1-1 ¶¶ 13(b), 19(b).  She does not describe the features of the machine that fail to meet manufacturing specifications or whether the machine deviated from specifications at all.  That is fatal to her claims because it means she has not alleged the basic wrong remedied by a manufacturing defect claim: the manufacturing of a product that is unreasonably dangerous because it differs from the expected output.  *Harrison v. Medtronic, Inc.*, 2022 WL 17443711, at *2 (5th Cir. Dec. 6, 2022) (per curiam); *see also Langston v. Ethicon Inc.*, 2021 WL 6198218, at *5 (N.D. Tex. Dec. 31, 2021) (Scholer, J.) (dismissing manufacturing defect claim where plaintiffs failed to allege "any facts regarding the [product's] intended design or specifications, how its manufacture deviated from those specifications, or how such a deviation caused the alleged injuries").

The Court rejects Ms. Williams's suggestion that she supported her generalized manufacturing defect allegations sufficiently by adding the allegation that the laminating machine "misfed."  *See* Doc. No. 5 at 5 (quoting Doc. No. 1-1 ¶ 10).  A machine that misfeeds is, as Ms. Williams observes, one that does not correctly receive input fed into it.  *Id.*; *see also Misfeed*, Oxford English Dictionary (July 2023 update) ("A failure or irregularity in the feeding of a machine or mechanism.").  It does not follow that the machine errs because it deviates from the design its manufacturer intended to make.  Accepting that the laminating machine misfed as alleged, the Court is no closer to

discovering whether any such deviation is, as it must be, the source of Ms. Williams's manufacturing defect claims. *See Adams v. Medtronic, Inc.,* 2020 WL 5868113, at *4 (E.D. Tex. Oct. 1, 2020) (finding that plaintiffs' allegation that a stapler misfired did not save their otherwise conclusory manufacturing defect claim).

## C. Marketing Defect

The Court dismisses Ms. Williams's marketing defect claims because she has not adequately pled that the marketing of the laminating machine she used inadequately warned of the machine's dangers.  The premise of a marketing defect claim is that the defendant should have foreseen an unreasonable risk of harm posed by a product but marketed the product without a providing a warning or instructions that would have mitigated the risk and prevented the plaintiff from suffering the harm.  *See Wright v. Ford Motor Co.,* 508 F.3d 263, 275 (5th Cir. 2007).  Ms. Williams tries to fit two theories of recovery within this framework, both of which are insufficiently developed to meet the pleading standard.

For her first theory, Ms. Williams primarily recites the elements of a marketing defect claim.  She contends that General Binding failed to adequately warn operators of the laminating machine that the machine could activate unexpectedly.  Doc. No. 1-1 ¶¶ 13(c), 19(c).  Lacking from this theory is any factual allegation from which the Court could infer that General Binding's warning was actually inadequate.  Ms. Williams does not clarify what sort of warning might mitigate the risk that the laminating machine would activate unexpectedly or why General Binding's warnings—if any—

failed to sufficiently mitigate the risk.  The Court is left with Ms. Williams's bare as-sertion that General Binding's warnings were subpar.  That is not enough to make her first marketing defect theory plausible.  *See Harrison*, 2022 WL 17443711, at *3 (citing *Fearrington v. Bos. Sci. Corp.*, 410 F. Supp. 3d 794, 802 (S.D. Tex. 2019)); *Charles v. K-Patents, Inc.*, 2018 WL 9869532, at *6 (E.D. Tex. Aug. 10, 2018).

Ms. Williams's second theory goes a little further but still runs into the same problem.  She says that General Binding should have, but did not, adequately instruct owners of the laminating machine as to how they should maintain the machine to pre-vent it from activating unexpectedly.  Doc. No. 1-1 ¶¶ 13(d), 19(d).  Review of this theory at least informs the Court that the instructions General Binding allegedly needed to provide relate to the maintenance of laminating machines rather than other activities like handling the machines or selecting a location to place them.  The Court remains uninformed about why a maintenance instruction would mitigate the risk that the machines would activate unexpectedly since Ms. Williams has not explained what causes the unexpected activation.  The Court also does not learn what sort of mainte-nance instruction would achieve the goal of mitigating the risk of unexpected activa-tions or why General Binding's instructions—again, if any—were not up to the task. In these circumstances, Ms. Williams's second theory cannot proceed.  Like her first theory, it is unsupported by factual allegations plausibly suggesting that General Bind-ing's marketing was inadequate but some other marketing would be sufficient.  *See Woodhouse v. Bird Rides, Inc.*, 2021 WL 1986427, at *9 (W.D. Tex. May 17, 2021)

(dismissing marketing defect claim where plaintiff specified the type of warning defendant should have given but failed to describe the content of the warning sufficiently to permit an inference about whether the actual warning was inadequate); *Cofresi v. Medtronic, Inc.*, 450 F. Supp. 3d 759, 768 (W.D. Tex. 2020) (dismissing marketing defect claim where plaintiff specified certain aspects of defendants' warning that were deficient but failed to allege enough facts to infer the warning was inadequate).

### D. Gross Negligence

The Court lastly considers Ms. Williams's allegations that General Binding was grossly negligent and finds them impermissibly conclusory. A claimant who proves gross negligence may be able to recover exemplary damages, and this is Ms. Williams's purpose in offering her allegations. Doc. No. 1-1 ¶ 21; Tex. Civ. Prac. & Rem. Code § 41.003(a)(3). In a single paragraph, Ms. Williams echoes the legal standard for gross negligence. Doc. No. 1-1 ¶ 21. The prerequisites to a finding of gross negligence include proof that the defendant was aware its acts and omissions involved an extreme risk of harm to others and proof that the defendant proceeded in conscious indifference to their rights, safety, or welfare. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012) (citing Tex. Civ. Prac. & Rem. Code § 41.001(11)); *Medina v. Zuniga*, 593 S.W.3d 238, 247–48 (Tex. 2019). Ms. Williams says that General Binding consciously disregarded an extreme risk that its acts and omissions would injure her and others. Doc. No. 1-1 ¶ 21.

This recitation of legal conclusions is insufficient to plead gross negligence.  Assuming the risk of harm Ms. Williams identifies is the risk that the laminating machine she used would activate unexpectedly and trap arms and hands, she alleges no facts supporting her characterization of the risk as extreme except her own injury and no facts supporting her belief that General Binding consciously disregarded the risk.  She must supply the missing factual allegations before the Court can let her proceed with her request for exemplary damages based on gross negligence.  *See Charles*, 2018 WL 9869532, at *7–8 (collecting cases); *Cofresi*, 450 F. Supp. 3d at 768.

## IV.   CONCLUSION

The Court **GRANTS** General Binding's Motion to Dismiss and **DISMISSES** all of Ms. Williams's claims without prejudice.  If she has a good faith basis to do so, Ms. Williams **MAY FILE** an amended pleading no later than fourteen days after the entry of this order.  As an attachment to any such pleading, she **SHALL FILE** a redline showing the differences between her amended pleading and her original Petition.

**SO ORDERED.**

Signed February 14th, 2024.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE

11